# EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT
 2           NORTHERN DISTRICT OF CALIFORNIA
 3              SAN FRANCISCO DIVISION
 4   ------------------------------
 5   THE BOARD OF TRUSTEES OF THE )
     LELAND STANFORD JUNIOR         )
 6   UNIVERSITY,                    )
                                    )
 7            Plaintiff,            )   Case No.:
                                    )   3:18-cv-01199 VC
 8            vs.                   )
                                    )
 9   AGILENT TECHNOLOGIES, INC.,    )
     et al.,                        )
10                                  )
              Defendants.           )
11   ------------------------------)
     AND RELATED CROSS-ACTIONS.     )
12   ------------------------------)
13
14        VIDEOTAPED DEPOSITION OF BILL ROBERTS
15              Palo Alto, California
16              Monday, March 18, 2019
17                  Volume 1
18
19
20
21   Reported by:
22   RACHEL FERRIER,
23   CSR No. 6948
24   Job No. 3252581
25   PAGES 1 - 83
```

CERTIFIED TRANSCRIPT

Page 1

1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                  SAN FRANCISCO DIVISION

4    _____

5    THE BOARD OF TRUSTEES OF THE  )
     LELAND STANFORD JUNIOR        )
6    UNIVERSITY,                   )
                                   )
7              Plaintiff,          )   Case No.:
8                                  )   3:18-cv-01199 VC
               vs.                 )
9                                  )
10   AGILENT TECHNOLOGIES, INC.,   )
     et al.,                       )
11                                 )
               Defendants.         )
12   _____)
13   AND RELATED CROSS-ACTIONS.    )
14   _____)

15

16        VIDEOTAPED DEPOSITION OF BILL ROBERTS, VOLUME 1,

17   taken on behalf of the Plaintiff, at Perkins Coie LLP,

18   3150 Porter Drive, Palo Alto, California, beginning at

19   9:07 a.m. and ending at 11:16 a.m. on Monday,

20   March 18, 2019, before RACHEL FERRIER, Certified

21   Shorthand Reporter No. 6948.

22

23

24

25

                                            Page 2

```
 1     APPEARANCES:

 2

 3     For Plaintiff:

 4               PERKINS COIE LLP

 5               BY:   CHRISTOPHER P. BERKA

 6               Attorney at Law

 7               3150 Porter Drive

 8               Palo Alto, California 94304

 9               650.838.4300

10               cberka@perkinscoie.com

11

12     For Defendant AGILENT TECHNOLOGIES, INC.:

13               MEYERS NAVE

14               BY:   JOSHUA A. BLOOM

15               Attorney at Law

16               555 12th Street, Suite 1500

17               Oakland, California 94607

18               510.808.2000

19               jbloom@meyersnave.com

20

21

22

23

24

25
```

                                                    Page 3

```
1    APPEARANCES (continued):

2

3    For Third-Party Defendant NOKIA OF AMERICA CORPORATION:

4             SPENCER FANE LLP (via phone)

5             BY:  GERALD P. GREIMAN

6             Attorney at Law

7             1 North Brentwood, Suite 1000

8             St. Louis, Missouri 63105

9             314.863.7733

10            ggreiman@spencerfane.com

11

12   Videographer:

13            DUSTIN BROWN

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 4

```
1                          INDEX

2    WITNESS                          EXAMINATION

3    BILL ROBERTS

4    VOLUME 1

5

6                       BY MR. BERKA                  8

7

8

9

10                        EXHIBITS

11   NUMBER          DESCRIPTION                  PAGE

12   Exhibit 1     Notice of Deposition of

13                 Bill Roberts                     7

14

15   Exhibit 2     Site Location Map              17

16

17   Exhibit 3     Letter dated 4/5/99 to

18                 Curtis Feeny from

19                 Frank Pedraza                   31

20

21   Exhibit 4     Letter dated 6/18/99 to

22                 The Board of Trustees of

23                 The Leland Stanford

24                 Junior University from

25                 Bill Roberts                    43
```

Veritext Legal Solutions
866 299-5127

```
 1                          EXHIBITS
 2    NUMBER              DESCRIPTION                  PAGE
 3    Exhibit 5     Assignment and Assumption
 4                  of Lease                           46
 5
 6    Exhibit 6     Letter dated 10/25/99 to
 7                  Storm Water Permitting
 8                  Unit from Janice Nakao             54
 9
10    Exhibit 7     Real Estate Matters
11                  Agreement                          55
12
13    Exhibit 8     Assignment of Lease                64
14
15    Exhibit 9     Letter dated 11/30/99 to
16                  Stephen I. Morse from
17                  HP Company                         68
18
19    Exhibit 10    SEC Form 8-K                       70
20
21
22
23
24
25
                                               Page  6
```

```
1              Palo Alto, California; Monday, March 18, 2019

2                             9:07 a.m.

3

4              (Exhibit 1 was marked for identification

5              by the Court Reporter.)

6

7              THE VIDEOGRAPHER:  Good morning.                    09:07:51

8              We are on record at 9:07 a.m. on March 18th,        09:07:52

9    2019.                                                         09:07:58

10             This is the video-recorded deposition of           09:07:58

11   Bill Roberts.                                                 09:08:00

12             My name is Dustin brown, here with our Court        09:08:02

13   Reporter, Rachel Ferrier.  We are here from Veritext          09:08:06

14   Legal Solutions.                                              09:08:11

15             This deposition is being held at 3150 Porter        09:08:11

16   Drive in Palo Alto, California.                               09:08:16

17             The caption of this case is The Board of Trustees   09:08:19

18   of the Leland Stanford Junior University versus Agilent       09:08:26

19   Technologies, Incorporated, et al.                            09:08:29

20             Please note that audio and video recording will    09:08:31

21   take place, unless all parties agree to go off the            09:08:34

22   record.                                                       09:08:37

23             The microphones are sensitive and may pick up       09:08:37

24   whispers and private conversations.                           09:08:41

25             If there are any objections to proceeding, please   09:08:44
```

                                                                Page 7

| | | |
|---|---|---|
| 1 | state them at the time of your appearance, beginning | 09:08:47 |
| 2 | with the noticing attorney. | 09:08:49 |
| 3 | MR. BERKA:  No objection. | 09:08:52 |
| 4 | MR. BLOOM:  No objection. | 09:08:55 |
| 5 | THE VIDEOGRAPHER:  Okay.  Your names, please. | 09:08:56 |
| 6 | MR. BERKA:  This is Chris Berka.  I'm the | 09:08:58 |
| 7 | attorney for the plaintiff in this case. | 09:09:01 |
| 8 | MR. BLOOM:  Joshua Bloom.  I represent Agilent | 09:09:03 |
| 9 | and the Hewlett-Packard entities as defendants in this | 09:09:07 |
| 10 | case and representing Mr. Roberts in this deposition. | 09:09:10 |
| 11 | THE VIDEOGRAPHER:  And on the phone, please? | 09:09:13 |
| 12 | MR. GREIMAN:  Gerry Greiman on the phone.  I | 09:09:16 |
| 13 | represent Third-Party Defendant Nokia. | 09:09:18 |
| 14 | BILL ROBERTS, | 09:09:30 |
| 15 | having been administered an oath, was examined and | 09:09:30 |
| 16 | testified as follows: | 09:09:30 |
| 17 | THE WITNESS:  I do. | 09:09:30 |
| 18 | EXAMINATION | 09:09:31 |
| 19 | BY MR. BERKA: | 09:09:31 |
| 20 | Q   Good morning, Mr. Roberts. | 09:09:33 |
| 21 | Would you please spell -- spell your name for the | 09:09:35 |
| 22 | record. | 09:09:35 |
| 23 | A   So Bill, B-i-l-l, Roberts, R-o-b-e-r-t-s. | 09:09:39 |
| 24 | Q   And your residence and business addresses? | 09:09:43 |
| 25 | A   1020 Cortez Avenue in Burlingame, California | 09:09:47 |

Page 8

| | | |
|---|---|---|
| 1 | 94010.  And my business address -- actually, we just | 09:09:52 |
| 2 | moved our office, and so let me get my business card. | 09:09:56 |
| 3 | It's on University Avenue.  I currently work for | 09:09:59 |
| 4 | Cushman & Wakefield, and I've given away all my business | 09:10:03 |
| 5 | cards.  It's at the corner of Cowper and University in | 09:10:10 |
| 6 | Palo Alto. | 09:10:15 |
| 7 | Q    Okay.  Have you ever had your deposition taken | 09:10:15 |
| 8 | before? | 09:10:19 |
| 9 | A    No. | 09:10:19 |
| 10 | Q    Have you had an opportunity to talk to Mr. Bloom | 09:10:20 |
| 11 | about the procedures that govern a deposition? | 09:10:23 |
| 12 | A    Yes. | 09:10:27 |
| 13 | Q    You understand I'll be asking questions, and -- | 09:10:27 |
| 14 | and we ask that you provide the most complete and | 09:10:32 |
| 15 | accurate answers that you can. | 09:10:35 |
| 16 | Do you understand that? | 09:10:37 |
| 17 | A    Yes. | 09:10:38 |
| 18 | Q    You understand that you can't answer with a nod | 09:10:38 |
| 19 | of the head or a gesture because we have a Court | 09:10:43 |
| 20 | Reporter here who is going to make a written transcript | 09:10:46 |
| 21 | of the proceedings. | 09:10:50 |
| 22 | Do you understand that? | 09:10:51 |
| 23 | A    Yes. | 09:10:52 |
| 24 | Q    If I ask you any question that you do not | 09:10:52 |
| 25 | understand, will you agree to tell me that you don't | 09:10:56 |

Page 9

```
1      A    It's not mine.                                    10:12:27

2           (Exhibit 5 was marked for identification          10:12:49

3      by the Court Reporter.)                                10:12:50

4  BY MR. BERKA:                                              10:12:50

5      Q    Handing you a document marked as Exhibit 5, which 10:12:50

6  is a four-page document.                                   10:13:07

7           Have you had time to look at this?                10:13:09

8      A    Yes, I've seen this.                              10:13:11

9      Q    You have seen this document before?               10:13:13

10     A    Yes.                                              10:13:15

11     Q    What is this?                                     10:13:16

12     A    This is an Assignment and Assumption of Lease.    10:13:16

13     Q    That's your signature on --                       10:13:24

14     A    Yes.                                              10:13:27

15     Q    -- the second page?                               10:13:27

16     A    Yes.                                              10:13:29

17     Q    And you, in fact, signed this document?           10:13:31

18     A    Yes.                                              10:13:33

19     Q    How did this document come about?                 10:13:33

20     A    You know, I don't recall how it came about,       10:13:39

21  frankly.                                                  10:13:46

22     Q    Do you know who prepared this document?           10:13:46

23     A    I don't know.                                     10:13:53

24     Q    On the second page, below your signature, is a    10:13:55

25  title.                                                    10:14:15
```

Page 46

```
1    references a, quote, newly formed subsidiary of        10:25:04

2    Hewlett-Packard Company called Agilent Technologies,   10:25:07

3    Inc.                                                   10:25:07

4          Do you see that in the first paragraph that      10:25:10

5    reference?                                             10:25:11

6      A   I do.                                            10:25:12

7      Q   To the best of your knowledge, as of             10:25:12

8    October 25th, 1999, was Agilent Technologies, Inc., in 10:25:17

9    fact, a subsidiary of Hewlett-Packard Company?         10:25:23

10     A   Yes.                                             10:25:25

11     Q   The second paragraph states that Agilent         10:25:28

12   Technologies, Inc., will continue to operate the       10:25:35

13   facility in the same manner for the same purpose and   10:25:37

14   with the same personnel as it is operated by           10:25:41

15   Hewlett-Packard Company.                               10:25:44

16         Do you see that paragraph?                       10:25:45

17     A   I see that, yeah.                                10:25:46

18     Q   Was that an accurate statement as of             10:25:47

19   October 25th, 1999, to the best of your knowledge?     10:25:50

20     A   Best of my knowledge, yeah.                      10:25:52

21         (Exhibit 7 was marked for identification         10:26:08

22         by the Court Reporter.)                          10:26:08

23   BY MR. BERKA:                                          10:26:08

24     Q   Next, I am handing you a document that has been  10:26:15

25   marked as Exhibit 7.                                   10:26:19
```

Page 55

```
 1   recipients -- cc recipients, including Rebecca Bond.    10:46:38

 2           Do you know who that was?                       10:46:47

 3     A    I don't.                                         10:46:48

 4     Q    Elizabeth McDonald, do you know who that was?    10:46:48

 5     A    Elizabeth McDonald, she would have been an EHS   10:46:55

 6   employee, along with Alison and Jon Bauer.  They would  10:46:58

 7   have all been part of the EHS group.                    10:47:02

 8     Q    Does this refresh your memory with respect to    10:47:04

 9   whether you ever had any discussions with               10:47:08

10   Elizabeth McDonald about the environmental condition of 10:47:10

11   1601 South California?                                  10:47:13

12     A    No.                                              10:47:14

13     Q    There's also the name Annette Walton.            10:47:14

14           Do you know who that was?                       10:47:18

15     A    No.                                              10:47:19

16           (Exhibit 10 was marked for                      10:47:19

17           identification by the Court Reporter.)          10:47:19

18   BY MR. BERKA:                                           10:47:19

19     Q    Handing you a document marked Exhibit 10, what is 10:47:40

20   this?                                                   10:47:45

21     A    This is an SEC Form 8-K.                         10:47:45

22     Q    And what is a Form 8-K, to the best of your      10:47:52

23   knowledge?                                              10:47:57

24     A    Well, it outlines some of the fundamental        10:47:58

25   separation of the company in the disposition of         10:48:08
```

Page 70

```
 1   financial disclosures.                           10:48:15

 2        Q    In reviewing this document, does this refresh   10:48:17

 3   your memory that, in June of 2000, shareholders of HP   10:48:24

 4   received stock in Agilent Technologies?           10:48:31

 5        A    Yes.                                     10:48:34

 6        Q    The second page of this document appears to have   10:48:34

 7   a signature line for Robert P. Wayman.            10:48:47

 8        Do you see that?                             10:48:51

 9        A    Yes.                                     10:48:52

10        Q    Who was he in June of 2000?             10:48:52

11        A    He would have been the CFO.             10:48:55

12        Q    You reported directly or indirectly to him?   10:48:57

13        A    Up through his organization, yes.       10:49:00

14        Q    This document, on the second page, also includes   10:49:02

15   what appears to be a press release dated June 2nd of   10:49:12

16   2000.                                             10:49:15

17        Do you see that?                             10:49:16

18        A    Yes.                                     10:49:16

19        Q    Was there, in fact, to the best of your memory, a   10:49:16

20   press release issued on that day?                 10:49:20

21        A    Yes.                                     10:49:21

22        Q    And did that press release state what is shown   10:49:22

23   here in Exhibit 10?                               10:49:27

24        A    To the best of my knowledge, yes.       10:49:29

25        Q    Did you own stock in Hewlett-Packard at any time   10:49:32
```

Page 71

```
1        Q    I think I'm just about finished, but at this        11:15:35

2   point, I would just like to ask you whether you wish to       11:15:38

3   change any of the answers you have given in your              11:15:40

4   deposition here today?                                        11:15:42

5        A    No, I don't -- I don't think so.                    11:15:45

6        MR. BERKA:  Okay.  Well, at this time, I have no          11:15:49

7   further questions for the witness.                            11:15:51

8        Gerry, do you have any questions?                        11:15:57

9        MR. GREIMAN:  No, I have no questions.  Thank             11:16:00

10  you.                                                          11:16:02

11       THE VIDEOGRAPHER:  Okay.  We are going off record        11:16:03

12  at 11:16 a.m.  This concludes today's testimony given by      11:16:05

13  Bill Roberts.  Media will be retained by Veritext Legal       11:16:09

14  Solutions.  Thank you.                                        11:16:13

15       MR. BERKA:  Thank you.                                   11:16:15

16            (TIME NOTED:  11:16 A.M.)

17

18

19

20

21

22

23

24

25

                                                      Page 82
```

1        I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby certify:

3        That the foregoing proceedings were taken before

4   me at the time and place herein set forth; that any

5   witnesses in the foregoing proceedings, prior to

6   testifying, were placed under oath; that a verbatim

7   record of the proceedings was made by me using machine

8   shorthand which was thereafter transcribed under my

9   direction; further, that the foregoing is an accurate

10   transcription thereof.

11        I further certify that I am neither financially

12   interested in the action nor a relative or employee of

13   any attorney or any of the parties.

14        IN WITNESS WHEREOF, I have this date subscribed

15   my name.

16

17   Dated:  April 02, 2019

18

19

20

21

22

23

24        RACHEL FERRIER

25        CSR No. 6948

Page 83

RECORDING REQUESTED BY:

AND WHEN RECORDED RETURN TO:

## ASSIGNMENT AND ASSUMPTION OF LEASE

THIS ASSIGNMENT AND ASSUMPTION OF LEASE is made as of _____, 1999, by and between Hewlett-Packard Company, a Delaware corporation ("Assignor"), and Agilent Technologies, a Delaware corporation ("Assignee").

### RECITALS

A.     Assignor is the Lessee under that certain Amendment, Assignment, Assumption and Consent to Assignment of Lease dated February 11, 1983 by and between The Board of Trustees of the Leland Stanford Junior University (Lessor); Elwood M. Haynes (Assignor) and Hewlett-Packard Company (Assignee); for the Leased Premises commonly known as 1601 California Avenue shown as the Leased Premises as Exhibit A.

B.     Assignor desires to assign its interest under the Lease to Assignee and Assignee desires to accept the assignment thereof.

### AGREEMENT

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

1.     Assignor hereby assigns and transfers to Assignee all of its right, title and interest in, to and under the Lease.

2.     Assignee hereby accepts the aforesaid assignment and assumes and covenants and agrees, for the benefit of Assignor and Lessor, faithfully to keep and perform each and all of the terms, covenants, agreements and conditions of the Lease on the part of the lessee thereunder to be kept and performed thereunder.

3.     By execution of this Assignment and Assumption, Assignee hereby represents, warrants and covenants to Lessor as follows:  Assignee is aware that detectable amounts of hazardous substances and groundwater contaminants have come to be located in, on, beneath and/or in the vicinity of the Premises.  (See, for example, State of California - Environmental Protection Agency, Department of Toxic Substances Control Remedial Action Orders, #94-99 dated August 17, 1994 at 1501 Page Mill Road.)  Assignee has made such investigations and inquiries as it deems appropriate to ascertain the effects, if any, of such substances and contaminants on its operations and persons using the Leased Premises.  Lessor makes no



EXHIBIT

5

3/18/19

STAN0017817

representation or warranty with regard to the environmental condition of the Leased Premises. Assignee, on behalf of itself and its affiliated entities and their respective partners, employees, successors and assigns (collectively, "Releasors"), hereby covenants and agrees not to sue and forever releases and discharges Lessor, and its trustees, officers, directors, agents and employees for and from any and all claims, losses, damages, causes of action and liabilities, arising out of hazardous substances or groundwater contamination presently existing on, under, or emanating from or to the Ground Lease Premises. Releasors understand and expressly waive any rights or benefits available under Section 1542 of the Civil Code of California or any similar provision in any other jurisdiction. Section 1542 provides substantially as follows: A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

    4.      Assignee shall not use any name, trademark or service mark of Lessor or Stanford University without the prior written consent of Lessor which consent may be given or withheld in Lessor's sole discretion.

    5.      For purposes of the Lease, Lessee's address for notices shall be:

Director of Real Estate
Hewlett-Packard Company
3000 Hanover St.
Palo Alto, CA 94304

Such address may be changed by notice given in accordance with the Lease.

    6.      This Assignment and Assumption shall be binding on and inure to the benefit of the parties hereto and their heirs, executors, administrators, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment and Assumption of Lease as of the date first above written.

ASSIGNOR

Hewlett-Packard Company, a Delaware corporation

By: _____

Its: _MGR. REAL ESTATE Planning & Development_

ASSIGNEE

Agilent Technologies, Inc.,
a Delaware corporation

By: _Marie Oh Huber_

Its: _Assistant Secretary_

j:park/asigcon.doc
FA943010.001

2

STAN0017818

The undersigned, as the Lessor under the Lease, hereby consents to the aforesaid assignment and assumption, provided that Lessor's consent is expressly made subject to all of the terms, covenants, agreements and conditions of the Lease and to the specific understanding that such consent shall not be or be deemed to be a release of the Assignor from any of its obligations under the Lease or a consent to any other or further assignment of the Lease.

LESSOR

THE BOARD OF TRUSTEES OF THE
LELAND STANFORD JUNIOR UNIVERSITY

By Stanford Management Company

By: _____
      Susan B. Meaney
Its:   Director, Stanford Research Park

j:park/asigcon.doc
FA943010.001

3

8/26/99

STAN0017819

All that certain real property situate in the City of
Palo Alto, County of Santa Clara, State of California,
described as follows:

BEGINNING at a point on the Southeasterly line of
California Avenue (66.00 feet wide) at the most Westerly
corner of that certain 3.933 acre parcel of land leased
by The Board of Trustees of The Leland Stanford Junior
University to 1451 California Avenue by Lease dated
March 9, 1961; said point of beginning bears South 33°
36'20" West 891.84 feet from the center line of Hanover
Street (60 feet wide) as established in Parcel A by Deed
from The Board of Trustees of The Leland Stanford Junior
University to the City of Palo Alto, recorded in the
Office of the Recorder of the County of Santa Clara,
State of California, in Book 3656 of Official Records at
page 424; thence from said point of beginning along
said line of California Avenue South 33°36'20" West
509.45 feet; thence leaving said line South 56°23'40"
East 734.11 feet along the corporate limits line of the
City of Palo Alto; thence leaving said line North 33°28'
37" East 441.44 feet to a Westerly corner of that certain
3.135 acre parcel leased by The Board of Trustees of The
Leland Stanford Junior University to Consolidated Develop-
ments Corporation by Lease dated as of December 8, 1961,
said 3.135 acre parcel being therein referred to as Parcel
B; thence along the Westerly line of said parcel North
19°02'43" West 112.11 feet to the Southerly corner of said
3.933 acre parcel leased by The Board of Trustees of The
Leland Stanford Junior University to said 1451 California
Avenue; thence along the Southwesterly line of said parcel
North 56°23'40" West 644.00 feet to the point of beginning.

CONTAINING 8.510 acres, more or less.

EXCEPTING AND RESERVING THEREFROM an easement 10 feet in
width, measured at right angles, lying contiguous with and
Northwesterly from the Easterly lines of the hereinabove
described parcel of land, said lines being more particularly
described as follows:  BEGINNING at the most Southerly cor-
ner of the hereinabove described parcel; thence from said
point of beginning North 33°28'37" East 441.44 feet and thence
North 19°02'43" West 112.11 feet.  Said easement is excepted
and reserved unto Lessor, its successors and assigns, as
appurtenant to and for the benefit of other lands of Lessor,
for the purpose of constructing, installing, operating, main-
taining, using, altering, repairing, inspecting, replacing
and relocating therein and/or removing therefrom storm
sewer facilities and all appurtenances necessary and con-
venient thereto.

Certified to be a true and correct
description.

C. Blacker
Superintendent

EXHIBIT A

STAN0017820

<PAGE>   1

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549-1004


FORM 8-K


CURRENT REPORT PURSUANT TO SECTION 13 OR 15(d) OF
THE SECURITIES EXCHANGE ACT OF 1934


DATE OF REPORT (Date of earliest event reported): June 2, 2000


HEWLETT-PACKARD COMPANY
(Exact Name of Registrant as Specified in Its Charter)


<TABLE>
<S>

| DELAWARE | 1-4423 | 94-1081436 |
|---|---|---|
| (State or Other Jurisdiction of Incorporation or Organization) | (Commission File Number) | (I.R.S. Employer Identification Number) |

</TABLE>


3000 HANOVER STREET, PALO ALTO, CA 94304
(Address of Principal Executive Offices) (Zip Code)

Registrant's telephone number, including area code (650) 857-1501

N/A
(Former Name or Former Address if Changed Since Last Report)


Item 2.     Acquisition or Disposition of Assets.

     On April 7, 2000, Hewlett-Packard Company ("HP") announced that the HP
Board of Directors (the "Board") approved the spin-off of Agilent Technologies,
Inc. ("Agilent Technologies") and declared a stock dividend of all of HP's
shares in Agilent Technologies. The dividend has been distributed on June 2,
2000 to HP shareowners of record as of 5:00 PM Eastern Daylight Time on May 2,
2000. HP received no consideration in connection with the distribution. At the
time the dividend was declared, HP held 380 million shares, or approximately
84.1 percent, of the outstanding common stock in Agilent Technologies.

     Effective July 31, 1999, HP's management and Board completed the plan of
disposition for Agilent Technologies. In accordance with Accounting Principles
Board Opinion No. 30, Agilent Technologies has been segregated as a discontinued
operation in HP's consolidated financial statements for all periods presented in
HP's Securities and Exchange Commission filings since July 31, 1999, including
but not limited to the Annual Report on Form 10-K for the year ended October 31,
1999 and the Quarterly Reports on Form 10-Q for the quarters ended July 31, 1999
and January 31, 2000.


Item 5.  Other Events

     On June 2, 2000, HP issued a press release announcing that, after the close
of the market on this date, it distributed 0.3814 of a share of Agilent
Technologies common stock as a dividend on each share of HP common stock
outstanding at 5:00 PM Eastern Daylight Time on May 2, 2000, the record date for
the distribution. The press release is attached as Exhibit 99 to this Form 8-K.


Item 7. Financial Statements and Exhibits

     (c)  Exhibits

          Exhibit 99   Press Release dated June 2, 2000.



EXHIBIT

10

3|18|19

<PAGE>    2


                                    SIGNATURES

        Pursuant to the requirements of the Securities Exchange Act of 1934, the
registrant has duly caused this report to be signed on its behalf by the
undersigned hereunto duly authorized.

                            HEWLETT-PACKARD COMPANY


Date: June 2, 2000


                                By: /s/ ROBERT P. WAYMAN
                                    -----------------------------------
                                    Robert P. Wayman
                                    Executive Vice President,
                                    Finance and Administration
                                    and Chief Financial Officer


<PAGE>    3


EXHIBIT INDEX

Exhibit 99  Press Release dated June 2, 2000.




<PAGE>    1

                                                           ·EXHIBIT 99

Editorial Contacts:

Emily Fox, HP
650.236.5234
emily_fox@hp.com

Steve Beitler, Agilent
650.857.2387
steve_beitler@agilent.com

              HP Completes Separation of Agilent Technologies

PALO ALTO, Calif., June 2, 2000 -- Hewlett-Packard Company (NYSE: HWP) announced
that, after close of market today, it will distribute 0.3814 of a share of
Agilent Technologies, Inc. (NYSE: A) common stock as a dividend on each share of
HP common stock outstanding on May 2, 2000, the record date for the
distribution.

On March 2, 1999, HP's board of directors announced its decision to create two
new companies from the existing HP organization. Agilent Technologies launched
its initial public offering of approximately 15.9 percent of its common stock on
Nov. 18, 1999, with HP retaining 84.1 percent of Agilent's common stock.

As a result of the distribution of shares of Agilent Technologies common stock,
Agilent Technologies is now a fully independent company.

Holders of HP common stock will receive cash instead of any fractional shares of
Agilent Technologies common stock that would otherwise be distributed to them in
the distribution. HP received a private-letter ruling from the Internal Revenue
Service stating that the distribution

 of whole shares of Agilent Technologies
common stock will be tax-free to HP and its stockholders for U.S. federal income
tax purposes.

HP has mailed an information statement relating to the distribution to holders
of HP common stock, which includes details on the distribution, along with
information about Agilent. This information statement also is available at
http://www.hp.com/financials. Stockholders who have questions about the Agilent

Technologies spin-off also may call HP's Information Agent, Corporate Investor
Communications, at (800) 553-4656. Information about Agilent is available at
www.agilent.com or by calling 877-942-4200.


<PAGE>   2

About Agilent Technologies

Agilent Technologies, Inc. (NYSE: A) is a diversified technology company,
resulting from Hewlett-Packard Company's plan to strategically realign itself
into two fully independent companies. With approximately 43,000 employees
serving customers in more than 120 countries, Agilent Technologies is a global
leader in designing and manufacturing test, measurement and monitoring
instruments, systems and solutions, and semiconductor and optical components.
The company serves markets that include communications, electronics, life
sciences and healthcare. In fiscal year 1999, the businesses comprising Agilent,
then a subsidiary of HP, had net revenue of more than $8.3 billion.

Information about Agilent Technologies can be found on the Web at
www.agilent.com.

About HP

Hewlett-Packard Company -- a leading global provider of computing and imaging
solutions and services -- is focused on making technology and its benefits
accessible to individuals and businesses through simple appliances, useful
e-services and an Internet infrastructure that's always on.

HP has 86,000 employees worldwide and had total revenue from continuing
operations of $42.4 billion in its 1999 fiscal year. Information about HP and
its products can be found on the World Wide Web at http://www.hp.com.