UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>  Plaintiff,<br><br>  v.<br><br>AGILENT TECHNOLOGIES, INC., et al.,<br><br>  Defendants. | Case No. 18-cv-01199-VC<br><br>**ORDER #2 RE CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 106, 114, 120, 123 |

The parties have filed two sets of cross-motions for summary judgment: one between Stanford and HP/Agilent, and one between HP/Agilent and Nokia. This order resolves some of the simpler issues presented: Part I addresses those between Stanford and HP/Agilent; Part II addresses those between HP/Agilent and Nokia. The remaining (and more challenging) issues will be decided closer to the trial date. The trial was scheduled for August of this year, but civil trials have been postponed because of the public health crisis. A revised schedule will be discussed at the case management conference scheduled for 10:00 a.m. on August 12.

I.

1. Stanford's SJ Motion, Sections 1, 7 –11, 13–17 of Part III.C (Dkt. No. 106). HP has not opposed Stanford's motion with respect to affirmative defenses 1, 13, 17–20, 23–26, 28–29,

31–37 raised in its answer, so those defenses are not available to HP or Agilent on Stanford's trespass and nuisance claims.

2. Stanford's SJ Motion, Part III.B.8, at 9 (Dkt. No. 106). HP did not oppose summary judgment on its act of God defense, and in any event has not identified any natural phenomena that could have caused the contamination on the property. Stanford's motion on this defense to CERCLA liability is therefore granted.

3. Stanford's SJ Motion, Part III.B.8, at 9 (Dkt. No. 106). Stanford's motion is granted on HP's defense that the contamination was caused by the act or omission of Granger, a third party who had leased and used the property before HP. CERCLA's third-party defense is not available if the third party's act or omission "occurred in connection with a contractual relationship, existing directly or indirectly, with the defendant." 42 U.S.C. § 9607(b). HP asserts that it was not in a qualifying contractual relationship with Granger. But HP concedes that it was assigned Granger's sublease, and a contractual relationship, for these purposes, "includes, but is not limited to, . . . leases or other instruments transferring title or possession" of the property. § 9601(35)(A). *See* 1970 Assignment and Acceptance of Sublease, Dkt. No. 121-8, at 2–3.

The statute's definition of contractual relationship excludes situations in which the defendant acquired the property after the contamination, if the defendant can show by a preponderance of the evidence that it neither knew of nor had reason to know of the contamination. § 9601(35)(A)(i). In a footnote and without further support, HP says "that was the case here." *See* Agilent and HP's Opposition, Dkt No. 145-1, at 19. But the statute requires more: to invoke that exception, HP would have to show that it carried out appropriate inquiries into the prior uses of the property and that it took reasonable steps to stop continuing release, prevent future release, and prevent or limit human or environmental exposure to the previously

released substance. § 9601(35)(B). Because HP has not offered evidence from which a jury could conclude that this exception applies, summary judgment is granted to Stanford on this defense.

4. Stanford's SJ Motion, Part III.B.8, at 9 (Dkt. No. 106). Stanford brought this case in February of 2018, well within the statute of limitations. CERCLA requires actions to recover costs to be brought within three years of the completion of a removal action. 42 U.S.C. § 9613(g)(2)(A). HP does not dispute that Stanford's removal costs continued through at least 2017. It argues instead that because its *own* removal actions "ensured protection of human health and the environmental for commercial industrial use, it is those actions that triggered the limitations period." *See* Agilent and HP's Opposition, Dkt No. 145-1, at 20. But HP confuses the question whether the costs were necessary or otherwise recoverable with the question of when they were incurred. The statute of limitations on Stanford's claims did not start to run before Stanford completed its removal action, which occurred no earlier than 2017. Summary judgment is therefore granted to Stanford on this defense.

5. Stanford's SJ Motion, Part III.C.3, at 11–12 (Dkt. No. 106). The as-is clause in the 2004 Option and Purchase Agreement applies only to Agilent (and not HP), so summary judgment is granted to Stanford on that issue. The 2004 agreement between Agilent and Stanford says that there are no intended third-party beneficiaries. *See* 2004 Option and Purchase Agreement ¶ 13.10, Dkt. No. 86-1, at 18. Although HP and Agilent were once affiliates, they separated in 2000, so Agilent signed the agreement with Stanford in 2004 as a fully independent company. *See* Form 8-K, Dkt. No. 87-1. HP may therefore not invoke the agreement against Stanford.

6. HP's Cross SJ Motion, Part V.A, at 16–18 (Dkt. No. 145-1). Agilent's summary judgment motion is denied with respect to its argument that the as-is clause bars Stanford's

CERCLA claims. A release clause can bar CERCLA claims when it is clear that the parties intended CERCLA claims to fall within its scope—for example, when a clause releases a party for any and all claims "in any way connected" to the purchase of a property. *See Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1461 (9th Cir. 1986). But as a general matter, an as-is clause does not release a seller of CERCLA liability. *Wiegmann & Rose International Corp. v. NL Industries*, 735 F. Supp. 957, 962 (N.D. Cal. 1990); *Southfund Partners III v. Sears, Roebuck & Co.*, 57 F. Supp. 2d 1369, 1375 (N.D. Ga. 1999) (collecting cases). Here, the agreement says that Stanford "shall purchase the Property in its 'AS IS' condition WITH ALL FAULTS as of the date of the closing." *See* 2004 Option and Purchase Agreement ¶ 9.4, Dkt. No. 86-1, at 14. That standard as-is clause does not operate to release Agilent of liability under CERCLA.

7. HP's Cross SJ Motion, Part VI, at 24–26 (Dkt. No. 145-1). HP's motion to disqualify Stanford's expert Susan Gallardo is denied. Although Gallardo has consulted for Stanford for many years and was involved in some of the decisions relating to the property, that experience does not prevent her from testifying as an expert. The Federal Rules of Evidence permit an expert to "base an opinion on facts or data in the case that the expert has . . . personally observed." Fed. R. Evid. 703. Thus, Gallardo's extensive knowledge of relevant facts does not disqualify her. Her relationship with Stanford could be a source of bias, but that goes to the weight of her testimony and not to its admissibility. *United States v. Bonilla-Guizar*, 729 F.3d 1179, 1185 (9th Cir. 2013).

II.

1. HP's SJ Motion, Part III.B, at 9–12 (Dkt. No. 114-1). HP seeks partial summary judgment only on the issue of Nokia's liability as Granger's successor. Nokia admits that it is responsible for Granger's liability as Granger's corporate successor, so the motion is granted.

2. Nokia's SJ Motion, Part III.B, at 10–14 (Dkt. No. 120). Nokia's motion for summary judgment on the basis of the text of the Acceptance of Assignment of Granger's sublease is denied. The agreement contains a clause saying that HP "[a]ssumes all of the obligations of the sublessee under said sublease commencing May 1, 1970 and agrees to pay and perform all of the obligations of the sublessee thereunder." 1970 Assignment and Acceptance of Sublease, Dkt. No. 121-8, at 3. As Nokia would have it, the phrase "commencing May 1, 1970" means that on that date, HP became responsible for any and all claims against Granger that might arise from Granger's prior use of the property. A more natural reading of the clause is that HP became responsible for all obligations as the sublessee of the property starting May 1, 1970. And the agreement contains no release clause or indemnification clause suggesting that the parties intended for HP to assume liability for all claims that could arise from Granger's prior use of the property. Accordingly, there is (at the very least) a factual dispute about the scope of the clause.

\* \* \*

One final note. The Court is concerned about the approach that HP and Agilent are taking to this litigation. They are taking positions that range from borderline frivolous to outright frivolous—for example, the statute of limitations argument and the motion to disqualify the expert. They asserted countless boilerplate defenses that obviously have no bearing on this case, requiring Stanford to incur unnecessary costs and legal fees fighting against them. Stanford never should have needed to move for summary judgment on those defenses; HP and Agilent should have dropped them long ago (indeed, the defenses never should have been asserted). This case is difficult and expensive enough already. HP and Agilent, as well as their lawyers, are on notice that any further litigation conduct along these lines will result in sanctions. Counsel for HP and Agilent are ordered to read this paragraph to their clients, and to attest in the soon-to-be-filed

5

case management statement that they did so.

**IT IS SO ORDERED.**

Dated: July 17, 2020

_____

VINCE CHHABRIA
United States District Judge