Christopher P. Berka, Bar No. 94911
CBerka@perkinscoie.com
Kevin R. Feldis, Bar No. 337541
KFeldis@perkinscoie.com
Brendan S. Sasso, Bar No. 332134
BSasso@perkinscoie.com
Clarissa R. Olivares, Bar No. 343455
COlivares@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

Meredith R. Weinberg (SBN WA 45713)
MWeinberg@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>AGILENT TECHNOLOGIES, INC., et al.,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTIONS. | Case No. 3:18-cv-01199-VC<br><br>**MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT BETWEEN PLAINTIFF AND NOKIA**<br><br>Judge: Honorable Vince Chhabria<br>Date: September 1, 2022<br>Time: 9:30 a.m.<br>Place: Courtroom 4 |

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ............................................................................................................. 2

II. LEGAL STANDARD ...................................................................................................... 3

    A. STATE CLAIMS ................................................................................................ 4

    B. CERCLA CLAIMS ............................................................................................. 5

III. FACTUAL BACKGROUND .......................................................................................... 5

IV. ARGUMENT .................................................................................................................... 7

    A. The Court Should Find the Agreement is a Good Faith Settlement of Tort Claims Pursuant to California State Law ........................................................... 7

        1. Approximation of Nokia's Proportionate Liability for Stanford's Damages ................................................................................................. 7

        2. The Amount of Consideration Given to Stanford by Nokia in Settlement ............................................................................................... 9

        3. Allocation of Settlement Proceeds ........................................................ 9

        4. Recognition that a Settlor Should Pay Less in Settlement Than it Would After Trial .................................................................................. 9

        5. The Financial Condition of the Settling Defendants and their Ability to Respond to a Judgment ......................................................... 10

        6. The Existence of Collusion ................................................................. 10

    B. The Court Should Approve the Agreement as a Good Faith Settlement Under CERCLA .............................................................................................. 10

        1. The Settlement is Procedurally Fair .................................................... 10

        2. The Settlement is Substantively Fair .................................................. 10

        3. The Settlement Meets CERCLA's Goals ........................................... 12

V. CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arizona v. City of Tucson*,
    761 F.3d 1005 (9th Cir. 2014) ............................................................................................... 5, 11

*B.F. Goodrich v. Betkoski*,
    99 F.3d 505 (2d. Cir. 1996), *rev'd, in part, on other grounds* ............................................... 5, 12

*Boeing Co. v. N. W. Steel Rolling Mills, Inc.*,
    No. 97-35973, 2004 WL 540706 (9th Cir. Mar. 17, 2004) ........................................................ 11

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
    No. 14-595, 2015 WL 7188230 (E.D. Cal. Nov. 16, 2015) ....................................................... 10

*Citizens Dev. Corp., Inc. v. Cnty. of San Diego*,
    No. 12-CV-00334, 2021 WL 510041 (S.D. Cal. Feb. 11, 2021) ................................................ 3

*City of Bangor v. Citizens Commc'ns Co.*,
    532 F.3d 70 (1st Cir. 2008) ...................................................................................................... 12

*City of W. Sacramento, Cal. v. R & L Bus. Mgmt.*,
    No. 2-18-CV00900, 2019 WL 5390558 (E.D. Cal. Oct. 22, 2019) ............................................ 3

*Coppola v. Smith*,
    No. 1:11-CV-1257, 2017 WL 4574093 (E.D. Cal. Oct. 13, 2017) ............................................. 3

*Env't Transp. Sys., Inc. v. Ensco, Inc.*,
    969 F.2d 503 (7th Cir. 1992) .................................................................................................... 11

*Fisher v. Superior Ct.*,
    103 Cal.App.3d 434 (1980) ........................................................................................................ 7

*Hatco Corp. v. W.R. Grace & Co.*,
    836 F. Supp. 1049 (D.N.J. 1994) .............................................................................................. 11

*Heim v. Heim*,
    No. 5:10-CV-03816, 2014 WL 1340063 (N.D. Cal. Apr. 2, 2014) ........................................... 13

*Horton v. Superior Ct.*,
    194 Cal.App.3d 727 (1987) .................................................................................................... 4, 5

*Lewis v. Russell*,
    No. CIV. S-03-2646, 2012 WL 671670 (E.D. Cal. Feb. 29, 2012) ........................................... 12

*Ruiz v. McKaskle*,
    724 F.2d 1149 (5th Cir. 1984) .................................................................................................... 5

**TABLE OF AUTHORITIES (continued)**

Page(s)

*Schaeffer v. Gregory Vill. Partners, L.P.*,
   No. 13-CV-04358, 2015 WL 1885634 (N.D. Cal. Apr. 24, 2015) ............................................9

*Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*,
   38 Cal.3d 488 (1985) ..................................................................................................... 4, 5, 7

*United States v. Cannons Eng. Corp.*,
   899 F.2d 79 (1st Cir. 1990) ......................................................................................... 5, 11, 12

*United States v. Coeur d'Alenes Co.*,
   No. 2:11-cv-633, 2012 WL 12895660 (D. Idaho Nov. 28, 2012), *aff'd*, 767
   F.3d 873 (9th Cir. 2014) .........................................................................................................10

*United States v. DiBlase*,
   45 F.3d 541 (1st Cir. 1995) ....................................................................................................12

**STATUTES**

28 U.S.C. § 2201 ..............................................................................................................................2

42 U.S.C. § 9613(f)(1) ...................................................................................................................11

Cal. Civ. Code Section 877 .................................................................................................... 3, 4, 5

Cal. Civil Code Section 3288 ..................................................................................................... 2, 8

Cal. Civil Code Section 3334 ..................................................................................................... 2, 8

Cal. Health and Safety Code § 25395.84 .................................................................................... 2, 8

Comprehensive Environmental Response, Compensation, and Liability Act, 42
   U.S.C. § 9607 .............................................................................................................. passim

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on September 1, 2022 at 9:30 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Vince Chhabria, in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94002, Plaintiff, The Board of Trustees of the Leland Stanford Junior University ("Stanford"), will and hereby does move this Court pursuant to California Code of Civil Procedure section 877 and the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. for an order (1) determining that a settlement between Stanford and Nokia of America Corporation ("Nokia") was entered into in good faith, (2) approving the settlement; (3) granting contribution, equitable indemnity and cost recovery protection to Nokia, and barring contribution, equitable indemnity or cost recovery claims against Nokia arising out of, or in any way, related to, the claims asserted by Stanford in this litigation and/or the claims released in Paragraph 4 of the settlement agreement between Stanford and Nokia; and (4) granting dismissal of Nokia with prejudice. A proposed order is filed with this motion.

The motion is based on this notice of motion, the accompanying memorandum of points and authorities, the declaration of Meredith Weinberg, all pleadings and papers on file in this action, and upon such other matters as may be properly presented to the Court, including at the time of the hearing.

-1-

3:18-CV-01199-VC
MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT BETWEEN PLAINTIFF AND NOKIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case arises from Stanford having incurred response costs and other damages resulting from contamination of soil at a parcel of land Stanford owns at 1601 S. California Avenue in Palo Alto (the "Site"). Under a ground lease, Nokia's predecessor Granger Associates ("Granger") operated at the Site from 1962 to 1970. HP, and later Agilent (referenced together as "HP"), conducted business on the property under the lease from 1970 to 2005. Stanford contends that HP caused the soil on the property to become contaminated with PCBs and TCE.

Stanford's complaint [Dkt. No. 1] seeks response costs under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, as well as damages for trespass and nuisance. In addition, Stanford seeks to recover the reasonable rental value of the property under Cal. Civil Code Section 3334 during the time the defendants' chemicals allegedly were a trespass after being left on the property after the lease expired. Stanford also seeks prejudgment interest under Cal. Civil Code Section 3288.[1]

After answering the complaint and asserting counterclaims and affirmative defenses,[2] HP filed a third-party complaint against Nokia [Dkt. No. 64] alleging (1) contribution under CERCLA, 42 U.S.C. § 9613; (2) contribution under California state law; (3) equitable indemnity under California state law; and (4) declaratory judgment for indemnity under 28 U.S.C. § 2201. HP alleged in the third-party complaint that Granger is wholly or partially responsible for causing the contamination.

Stanford and HP participated in an Early Neutral Evaluation on August 24, 2018. On January 21, 2020, after the filing of the third-party complaint, Stanford, Nokia, and HP engaged in a mediation at JAMS. On January 26, 2021, Stanford, Nokia, and HP had a settlement conference with Magistrate Judge Beeler. [Dkt. No. 166]. No settlement was reached at the ENE, mediation, or settlement conference.

---

[1] Stanford also seeks to recover attorneys' fees and experts' fees under Cal. Health and Safety Code § 25395.84.
[2] HP's counterclaim and laches affirmative defense were dismissed on summary judgment on August 13, 2019. [Dkt. No. 98]. The Court later dismissed a number of HP's additional affirmative defenses on summary judgment. [Dkt. No. 149].

On October 20, 2021, HP and Nokia stipulated to dismissal without prejudice of HP's third-party complaint against Nokia. [Dkt. No. 183]. The Court granted the dismissal without prejudice. [Dkt. No. 185].

Subsequent to the dismissal of the third-party complaint, Stanford and Nokia entered into a settlement agreement ("Agreement") that is the subject of this motion. *See* Declaration of Meredith Weinberg ("Weinberg Decl."), Exhibit 1. The Agreement provides that Nokia will pay Stanford $3.0 million if this Court determines the settlement is in good faith and issues an order (1) finding that the Agreement was entered into in good faith, and approving it; (2) granting contribution, equitable indemnity and cost recovery protection to Nokia, barring contribution, equitable indemnity or cost recovery claims against Nokia relating to the claims asserted by Stanford in this litigation; and (3) amending the previous dismissal without prejudice of HP's third-party claims against Nokia such that the dismissal now shall be with prejudice. Agreement at ¶¶ 2-3. Nokia and Stanford released one another from claims enumerated in the Agreement. *Id.* at ¶¶ 4-5. Stanford agreed to file this motion for a determination of good faith settlement. *Id.* at 3.

## II.   LEGAL STANDARD

In cases where a plaintiff has brought claims under both state law and CERCLA, courts generally examine the standards set out under both to determine whether the settlement is in good faith (California state law standard) and fair, reasonable, and consistent with CERCLA (CERCLA standard). *See generally Citizens Dev. Corp., Inc. v. Cnty. of San Diego*, No. 12-CV-00334, 2021 WL 510041, at *2 (S.D. Cal. Feb. 11, 2021) (describing both standards for approving a settlement as good faith under Cal. Civ. Code Section 877 and under CERCLA). Courts also sometimes combine the two standards or rely on one to prove the other. *City of W. Sacramento, Cal. v. R & L Bus. Mgmt.*, No. 2-18-CV00900, 2019 WL 5390558, at *2 (E.D. Cal. Oct. 22, 2019) (making a determination of good faith pursuant to Section 877, which applied both to plaintiff's state law and its CERCLA claims); *Coppola v. Smith*, No. 1:11-CV-1257, 2017 WL 4574093, at *3 (E.D. Cal. Oct. 13, 2017) ("Given the similarities, it is difficult to envision a settlement that is in 'good faith' but not fair, reasonable, and adequate, or vice versa.").

A.     STATE CLAIMS

Three of HP's third-party claims against Nokia were brought pursuant to California law. Therefore, the state's procedures for determining good faith apply. California Code of Civil Procedure section 877, provides in pertinent part:

> Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort . . . (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

A good faith determination bars any other joint tortfeasor from asserting claims "for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." C.C.P. § 877.6(c).

To satisfy the "good faith" standard, the amount of the settlement must be within the "reasonable range" or "ballpark" of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries. *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal.3d 488, 499 (1985). In *Tech-Bilt*, the California Supreme Court outlined six factors for determining good faith to the extent they are known at the time of settlement: (1) a rough approximation of the plaintiff's total recovery and the settlor's proportionate liability, (2) the amount paid in settlement, (3) the allocation of settlement proceeds among plaintiffs, (4) recognition that a settlor should pay less in settlement than it would if it were found liable at trial, (5) the financial conditions and the insurance policy limits of the settlor, and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants. *Id.*

*Tech-Bilt* promotes settlement, even if the settlement is less than a plaintiff's possible trial recovery, based upon the transaction costs avoided by reaching an early agreement. *Horton v. Superior Ct.*, 194 Cal.App.3d 727, 736 (1987) (holding that a plaintiff's probable recovery is discounted "based on the savings in trial time, defense costs, attorneys' fees and the avoidance of the risk inherent in every trial …"). This serves to encourage early settlement and curtail extensive and costly litigation. *Id.* at 728.

The party challenging a settlement's good faith bears the burden to show "the settlement is so far 'out of the ballpark' in relation to [the *Tech-Bilt*] factors as to be inconsistent with the

equitable objectives of the statute." *Id*. at 735; C.C.P. § 877.6(d). The reasonableness of a settlement is measured according to a "rough approximation" of what the plaintiffs would actually recover at trial, rather than the plaintiffs' claims of damages in their complaint.) *Id*. at 735.

### B.  CERCLA CLAIMS

HP's remaining claim against Nokia was brought under CERCLA. Before approving an agreement as a "good faith settlement" within the meaning of CERCLA, the Court must independently analyze the terms of the agreement and confirm it is procedurally and substantively fair, reasonable, and consistent with CERCLA's objectives. *See, e.g.*, *Arizona v. City of Tucson,* 761 F.3d 1005, 1011 (9th Cir. 2014). Congress sought through CERCLA to encourage settlements that would reduce the inefficient expenditure of funds on litigation rather than on cleanup. *Id.* (quoting *Chubb Custom Ins. Co. v. Space Sys/Loral Inc.*, 710 F.3d 946, 971 (9th Cir. 2013)).

Thus, it is not the duty of the reviewing court to determine "whether the settlement is one which the court itself might have fashioned, or consider[ed] as ideal . . . ." *United States v. Cannons Eng. Corp.,* 899 F.2d 79, 84 (1st Cir. 1990). Rather, "[i]n the absence of fraud or collusion, the trial court 'should be hesitant to substitute its own judgment for that of counsel.'" *Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984) (citations omitted). The court should also be guided by the general principle that settlements are to be encouraged, specifically in the context of CERCLA. *See B.F. Goodrich v. Betkoski,* 99 F.3d 505, 527 (2d. Cir. 1996) ("Courts considering CERCLA cases have recognized that the usual federal policy favoring settlements is even stronger in the CERCLA context."), *rev'd, in part, on other grounds*; *Cannons,* 899 F.2d at 84 ("[I]t is the policy of [CERCLA] to encourage settlements.").

### III.  FACTUAL BACKGROUND

Substantial evidence shows that most, if not all, of the contamination on the site was caused by HP, not by Granger.

- HP used 400 gallons of TCE on the Property each year between 1971 and 1977. *See* Jan. 12, 1990 Letter from HP to San Francisco Bay Regional Water Quality

Control Board [Dkt. 110-1, at 65]; Nokia, on the other hand, denies that Granger used TCE on the property. No documents have been produced showing that Granger used TCE on the site, and Nokia's expert (Lees), opined that Granger "never used" TCE at the Site in either a vapor degreaser or for cleaning electronics. *See* Lees Expert Report [Dkt. 115-11 at 10].

- TCE was detected in the soil where HP stored chemicals. *See* Love Expert Report [Dkt. 115-9, at 11, citing Preliminary Endangerment Assessment].

- It has been determined by the Department of Toxic Substances Control, Stanford's expert (Mohr), and HP's expert (Love), that a former sump on the property is the main source of the TCE contamination. *See, e.g.,* Dkt. 216-6 at 8 (DTSC letter stating: "The source of TCE in the subsurface, the former plating solution sump, was excavated and removed on March 19, 2015."); Scaramella Expert Report [Dkt. 110-1 at 12]; Love Expert Report [Dkt. 115-9, at 12]. There is no evidence, however, that Granger placed TCE into the sump even if, hypothetically, Granger used TCE on the property. Granger used the sump to dilute acid. Mixing TCE with acid risks producing toxic fumes. *See* Mohr Expert Rebuttal Report [Dkt. 136-2, at 4]. Granger was a sophisticated engineering company; it is unlikely to have created such a dangerous condition. HP, on the other hand, did not use the sump to dilute acid, so could have safely and conveniently placed TCE into the sump.

- Chemicals that HP used on the property in addition to TCE were found in the soil after the lease expired. *Id.* at 23. Nokia's predecessor Granger did not use those other chemicals. Thus, the only plausible explanation is that it was HP that caused these other chemicals to leak into the soil. The presence in the soil of chemicals that only HP used is evidence that HP's chemical handling practices produced environmental pollution. HP stored chemicals in a manner that was not within city regulations. [Dkt. No. 110-1 at 11 of 730].

- In 1987, while engaged in a construction project, HP spread PCB-containing soil over portions of the property that were previously uncontaminated, including

underneath a building and parking lot. *See* Dkt. No. 111-1 (Medley Expert Report), at 10. Granger was not involved in the construction project, having left the site 17 years earlier.

- During its 1987 construction activities, HP placed PCB-containing soil into trenches it excavated for underground utilities. *See* Gallardo Expert Report [Dkt. 109-1, at 16]. Again, Granger was not involved in the trenching project as it had left the Site years earlier.

## IV.   ARGUMENT

### A.   The Court Should Find the Agreement is a Good Faith Settlement of Tort Claims Pursuant to California State Law

The Court is entitled to presume the Agreement between Stanford and Nokia is in good faith. *See Fisher v. Superior Ct.*, 103 Cal.App.3d 434, 447 (1980) ("Once there is a showing made by the settlor of a settlement, we are of the opinion that the burden of proof on the issue of "good faith" shifts to the non-settling tortfeasor who asserts the claim that the settlement was not made in good faith). Moreover, even if the burden of proof is on Stanford and Nokia, an analysis of the *Tech-Bilt* factors confirms that the settlement between Stanford and Nokia is in good faith.

#### 1.   Approximation of Nokia's Proportionate Liability for Stanford's Damages

Stanford incurred $8,361,999 to assess and evaluate the contamination, remove, dispose, and replace contaminated soil, and install vapor barriers, ventilation systems, and plugs in the subsurface to prevent hazardous TCE vapors from interfering with use, enjoyment, and possession of the property. [Dkt. No. 218, 219]. Stanford seeks to recover these "response costs" under either CERCLA or as tort damages.[3] In addition to these response costs, Stanford seeks further damages that are recoverable only under the torts of trespass and nuisance. Specifically, Stanford seeks to recover the following:

1.   Reasonable rental value of the property during the time HP committed a trespass by leaving chemicals in the soil on Stanford's property after the lease expired. Cal. Civil Code

---

[3] Stanford may recover its response costs under either state law or CERCLA, but, of course, not both.

Section 3334. Stanford contends the reasonable rental value was $2,464,000. *See* Weinberg Decl., Exhibit 2 (Snider Depo.).

      2.     Consequential economic damages in the amount of $5,815,239, including increased costs and delays associated with constructing the faculty housing project due to the presence of PCBs and TCE in the soil.

      3.     Prejudgment interest on the tort damages under Cal. Civil Code Section 3288.

In addition to the tort-only damages identified above, Stanford seeks reasonable attorneys' fees and experts' fees under Cal. Health and Safety Code Section 25395.84.

Nokia is unlikely to be found liable for Stanford's tort-only damages. As shown above, substantial evidence shows it was HP, not Nokia's predecessor Granger, that caused the contamination. Even if Granger contributed, it would be liable in tort only if it had been negligent. *See e.g.*, CACI 2020 and 2021 (nuisance and trespass require evidence of negligence). HP's experts offer no evidence or opinion that Granger failed to exercise reasonable care. Nokia's liability for prejudgment interest and attorneys' and experts' fees is also uncertain at best. Prejudgment interest is awarded only at the jury's discretion under Cal. Civil Code Section 3288, and attorneys' and experts' fees are awarded only at the Court's discretion under Cal. Health and Safety Code Section 25395.84. The settlement value of Stanford's claims for prejudgment interest and attorneys' and experts' fees, therefore, should reasonably be discounted due to their discretionary and unpredictable nature.[4]

In short, Nokia is reasonably viewed as liable for (1) a percentage of the $8,361,999 in response costs that Stanford has incurred, as described above; (2) a small percentage of Stanford's additional tort damages; and (3) very little, if any, of the prejudgment interest or attorneys' and experts' fees.

Nokia's $3.0 million settlement payment to Stanford represents 36% of Stanford's response costs. Courts have approved much smaller settlements as being in good faith. *Schaeffer*

---

[4] Moreover, if Stanford recovers attorneys' and experts' fees, the fees would be due to HP's conduct in this litigation. Stanford did not sue Nokia or incur attorneys' or experts' fees pursuing a claim against Nokia. Therefore, Stanford would not have a strong case to recover from Nokia the fees Stanford incurred litigating its claims against HP.

*v. Gregory Vill. Partners, L.P.*, No. 13-CV-04358, 2015 WL 1885634, at *1 (N.D. Cal. Apr. 24, 2015) ($50,000 settlement of a $5 million claim was in good faith). Thirty-six percent is more than Nokia's fair share of response costs given evidence that HP caused most if not all the contamination. The over-payment is explainable, however, because it includes some compensation for a small percentage of Stanford's additional tort damages, prejudgment interest, and fees for attorneys and experts.

### 2. The Amount of Consideration Given to Stanford by Nokia in Settlement

The $3.0 million paid to settle is inside *Tech-Bilt*'s "ballpark." For example, it would be reasonable to divide liability between Nokia and HP based on the years when each operated at the Site during the period when the contamination occurred, as a rough approximation of how much contamination each contributed. Nokia's predecessor Granger operated on the property for eight years between 1962 and 1970. HP operated after 1970, including through 1987—1988 when its construction project spread PCBs onto previously clean areas. Using that formula, Nokia's eight years of operation out of a total 26 years (1962–1988) would result in Nokia being assigned 31% of the total liability. Nokia is paying 36% of Stanford's response costs. The residual 5% is reasonably based on the tort-only damages described above (consequential tort damages, reasonable rental value, prejudgment interest, fees for attorneys and experts). The $3.0 million amount equating to 36% of liability for response costs is within the "ballpark"—not close to a foul ball.

### 3. Allocation of Settlement Proceeds

All the settlement proceeds will be paid to Stanford, which is the only plaintiff. There is, therefore, no issue of allocation among multiple plaintiffs.

### 4. Recognition that a Settlor Should Pay Less in Settlement Than it Would After Trial

This factor goes to whether a tortfeasor's payment that is less than its likely liability can still be approved as good faith. As demonstrated under Factor #1, Nokia is not settling for less than its likely liability. But its settlement payment does represent an amount less than it would pay after a trial, because Nokia will be avoiding the costs it would have to spend in potential

litigation and trial if HP re-files claims against it in the future (if HP must pay all of Stanford's response and tort-only costs based on a jury verdict and then re-files its claims against Nokia which were only dismissed without prejudice).

### 5. The Financial Condition of the Settling Defendants and their Ability to Respond to a Judgment

The amount of the settlement is not discounted due to any concerns with respect to Nokia's financial condition.

### 6. The Existence of Collusion

There is no evidence of collusion or bad faith in the settlement. Stanford and Nokia arrived at the terms of the Agreement after arm's-length negotiations.

### B. The Court Should Approve the Agreement as a Good Faith Settlement Under CERCLA

The Court should approve the Agreement because it is procedurally and substantively fair, reasonable, and consistent with CERCLA's objectives.

#### 1. The Settlement is Procedurally Fair

A procedurally fair process—like the one that occurred here—involves good faith, arm's-length negotiations among experienced counsel during which the parties have an opportunity to negotiate. *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, No. 14-595, 2015 WL 7188230, at *2 (E.D. Cal. Nov. 16, 2015); *United States v. Coeur d'Alenes Co.*, No. 2:11-cv-633, 2012 WL 12895660, at *2 (D. Idaho Nov. 28, 2012), *aff'd*, 767 F.3d 873 (9th Cir. 2014). Stanford and Nokia arrived at the terms of the Agreement after several years of arm's-length negotiations between experienced counsel (also including in many instances negotiations that also involved HP and were supervised by a magistrate judge and JAMS mediator), after the exchange of discovery and motions practice, and after negotiating and exchanging drafts of the Agreement. The Agreement is procedurally fair.

#### 2. The Settlement is Substantively Fair

The requirement of substantive fairness under CERCLA—which the Agreement also demonstrates—requires settlement terms "based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties

according to rational (if necessarily imprecise) estimates of how much harm each . . . has done." *Arizona*, 761 F.3d at 1012 (internal quotation omitted). Courts may factor other equitable considerations into the equation, such as reasonable discounts (or as applicable, enhancements) for litigation risks and time savings. *Cannons*, 899 F.2d at 90. Courts will uphold the terms of a settlement, so long as "the chosen measure of comparative fault" on which the settlement terms are based is not "arbitrary, capricious, and devoid of a rational basis." *Id.* at 87.

Under CERCLA, "the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Courts allocating CERCLA costs have extremely wide latitude in equitably allocating costs, and may consider "several factors, a few factors, or only one determining factor . . . depending on the totality of circumstances presented to the court." *Env't Transp. Sys., Inc. v. Ensco, Inc.*, 969 F.2d 503, 509 (7th Cir. 1992).

The most common way in which courts have attempted to allocate CERCLA costs is based, in large part, on the amount, type, and toxicity of hazardous substances discharged by the respective parties. In many instances, courts do nothing more than allocate exclusively based on the relative volumes of contamination attributable to each party. *See, e.g., Boeing Co. v. N. W. Steel Rolling Mills, Inc.*, No. 97-35973, 2004 WL 540706, at *3 (9th Cir. Mar. 17, 2004). For purposes of CERCLA, as described above, Stanford's response costs total $8,361,999 as described above. Nokia's payment of $3.0 million, representing 36%, is substantively reasonable based on the evidence as well as the "time of use" method employed by some courts. *See, e.g., Hatco Corp. v. W.R. Grace & Co.*, 836 F. Supp. 1049, 1069 (D.N.J. 1994) (Grace given 57.6% of the liability based on its nineteen years of use and Hatco 42.4% for its fourteen years of operation). Here, a time of use breakdown would result in a 31% fair share for Nokia, as described above, less than the 36% Nokia has agreed to pay.[5]

Rough justice is typical in CERCLA settlements, since "fairness rarely can be described in absolute terms. There is no litmus test for it and no one allocation that will, in a CERCLA case,

---

[5] Granger and HP together operated at the Site for 43 years; Granger only operated for 8 years, HP for the remaining 35 years.

comprise the only fair allocation. Rather, fairness is a mutable construct that takes on different forms and shapes in different factual settings." *United States v. DiBlase*, 45 F.3d 541, 546 (1st Cir. 1995). CERCLA settlements "do not demand perfection;" instead, it is sufficient that "the data used to apportion liability [fall] within the broad spectrum of plausible appropriations." *City of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 98 (1st Cir. 2008).

The Agreement here is based on the parties' assessment of facts and fairly and plausibly allocates Nokia's responsibility for Stanford's response costs. Moreover, Nokia and Stanford reasonably concluded that it is more advantageous to them, in light of potential litigation risks, to resolve Nokia's liability now rather than expend the resources necessary to address any claims that HP may re-file after trial in this case. By settling, Nokia and Stanford will avoid the costs of future legal expenses and the expenditure of judicial resources to address HP's claims concerning Nokia's role at the Site. Finally, with the Agreement, both parties obtain certainty: Stanford obtains $3.0 million as reimbursement for its response costs. Nokia ensures it will have no further liability for Stanford's claims at the Site. In sum, the Agreement is substantively fair.

### 3. The Settlement Meets CERCLA's Goals

CERCLA has two main objectives: (1) to achieve the prompt and effective cleanup of hazardous waste sites, and (2) to allocate the cost of cleanup to those responsible for the contamination. *Cannons*, 899 F.2d at 90–91. Because CERCLA cases tend to involve complex, multi-party litigation that can take years (or even decades) to complete, the statute recognizes that public and private resources are best spent solving environmental problems rather than fighting about who is responsible in court. *See DiBiase*, 45 F.3d at 546 ("[S]ettlements reduce excessive litigation expenses and transaction costs, thereby preserving scarce resources for CERCLA's real goal: the expeditious cleanup of hazardous waste sites."). CERCLA therefore encourages settlement as the primary means of achieving its twin goals. *See B.F. Goodrich v. Betkoski*, 99 F.3d 505, 527 (2d Cir. 1996) ("Courts considering CERCLA cases have recognized that the usual federal policy favoring settlements is even stronger in the CERCLA context."), *rev'd, in part, on other grounds*; *Lewis v. Russell*, No. CIV. S-03-2646, 2012 WL 671670, at *3 (E.D. Cal. Feb. 29, 2012) ("Indeed, settlement is a favored outcome under CERCLA"); *Heim v. Heim*, No. 5:10-CV-

03816, 2014 WL 1340063, at *7 (N.D. Cal. Apr. 2, 2014) ("The Court also recognizes the strong federal interest in promoting settlement of complex CERCLA actions").

Even though Stanford has already cleaned up the Site, the settlement is still consistent with CERCLA's strong statutory preference—at a minimum, it will reduce the litigation burdens for the parties and this Court by precluding HP from re-filing claims against Nokia in the future.

## V.  CONCLUSION

For the reasons given, the motion should be granted.

Dated: July 27, 2022

**PERKINS COIE LLP**

By: */s/Christopher P. Berka*
    Christopher P. Berka (SBN CA 94911)
    Meredith R. Weinberg (SBN WA 45713)
    Kevin R. Feldis (SBN 337541)
    Brendan S. Sasso (SBN 332134)
    Clarissa R. Olivares (SBN 343455)

Attorneys for Plaintiff THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY