UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>AGILENT TECHNOLOGIES, INC., et al.,<br><br>　　　　　　Defendants. | Case No. 18-cv-01199-VC<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 216 |

　　　　HP and Agilent's motion for summary judgment on Stanford's nuisance and trespass claims is denied. This ruling assumes that the reader is familiar with the summary judgment record and the arguments made by the parties. In addition, for simplicity, this ruling speaks solely in terms of nuisance, because the analysis for trespass is the same.

I.

　　　　California law distinguishes between two types of nuisances: "continuous" and "permanent." *McCoy v. Gustafson*, 180 Cal. App. 4th 56, 84 (2009). A continuous nuisance is one that can be abated at a reasonable cost; a permanent nuisance cannot be. *Id.*

　　　　The label "continuous nuisance" is quite confusing. California's jury instruction on this issue is illustrative: it states, "A nuisance is continuous if it can be discontinued." Judicial Council of California Civil Jury Instruction 2030 ("Affirmative Defense—Statute of Limitations—Trespass or Private Nuisance"). It makes more sense to use a term like "abatable" because that feature is what distinguishes the two categories. The remainder of this ruling thus avoids the term "continuous nuisance." The parties should plan to avoid the term at trial as well.

The distinction between permanent and abatable nuisances matters for the kind of damages that plaintiffs can seek and the form of their legal action. When a nuisance is permanent, the plaintiff must bring one lawsuit for all past, present, and future damages (generally, the diminution in the property's value caused by the nuisance). *Starrh & Starrh Cotton Growers v. Aera Energy LLC*, 153 Cal. App. 4th 583, 592 (2007). When a nuisance is abatable, in contrast, the plaintiff can only sue for past and present damages; "prospective damages are not awarded because the [nuisance] may be discontinued or abated at some time, ending the harm." *Id.* If the nuisance is not abated, however, the plaintiff can continue to bring lawsuits for damages in perpetuity. *Id.*

This distinction matters for the statute of limitations, too. The statute of limitations for both permanent and abatable nuisances is three years, but the effect of that statute of limitations depends on the kind of nuisance. The law considers a permanent nuisance to be "completed at the time of entry," triggering the statute of limitations. *Id*. As such, the plaintiff must file suit within three years of obtaining notice of the permanent nuisance. *McCoy*, 180 Cal. App. 4th at 84. An abatable nuisance, in contrast, is "essentially a series of successive injuries, and the statute of limitations begins anew with each injury." *Starrh*, 153 Cal. App. 4th at 592. When a nuisance is abatable, then, the plaintiff can sue for any damages that occurred within the three years prior to that lawsuit—even if they had notice long before that. *See id.* Any claim for damages outside of that three-year period is time-barred. *Id.*

Whether a nuisance is permanent or abatable is generally a question of fact for the jury. *Id.* at 597. These same principles apply to claims for trespass. *Id.* at 594.

II.

HP and Agilent argue that the TCE contamination is a permanent nuisance because it cannot be abated. If that's true, then Stanford's claim would be time-barred because Stanford has long been aware of the contamination. Stanford, in turn, argues that it has *already* abated the TCE contamination, and so the contamination is/was an abatable nuisance. Both sides agree that Stanford's lawsuit would be timely if it involved an abatable nuisance.

Although Stanford removed some of the contaminated soil from the property (as well as the TCE-leaking sump), it determined that complete removal of the TCE was not feasible. *See* Expert Opinion of Peter Scaramella, Dkt. No. 216-9 at 20. Stanford thus took actions to minimize the effects of the remaining TCE. Among other "response actions," Stanford lay clean, compacted soil over areas of the property that had elevated TCE levels; it installed concrete slabs under each house to prevent TCE vapors from escaping into the indoor air; and it installed utility plugs in underground utility corridors to prevent the same.

HP and Agilent argue that, given this evidence, the TCE contamination is a permanent nuisance as a matter of law. First, they argue the TCE has not been (and cannot be) abated because Stanford concedes that some TCE remains on the property. *See McCoy*, 180 Cal. App. 4th at 89 (stating that a nuisance must be "cleaned up" to be abated). But in *Capogeannis v. Superior Court*, the California Court of Appeal rejected this "essentially semantic argument that because it does not appear the contamination can ever be *wholly* removed the nuisance must be deemed permanent." 12 Cal. App. 4th 668, 682–83 (1993). "[C]leanup standards set by responsible public agencies sufficiently reflect expert appraisal of the best that can be done to abate contamination in particular cases," and the court would not "insist upon absolutes these agencies do not require." *Id.* at 683. Even where complete removal might be impossible, the court held, a nuisance may still be deemed abatable. *Id.* at 682–83.

HP and Agilent argue that *Capogeannis* is distinguishable because it involved abatement through excavation (even if that excavation did not result in complete removal of the contamination). Here, in contrast, Stanford has taken other response actions to minimize the effects of TCE, essentially "building around" the contamination. HP and Agilent argue that such response actions—even if they receive regulatory approval—cannot constitute abatement as a matter of law. But this distinction is artificial. Abatement can include attempts to minimize the effects of a nuisance, even if the nuisance cannot be entirely stopped or removed. In *Baker v. Burbank-Glendale-Pasadena Airport Authority*, for instance, the California Supreme Court held that an airport was the "quintessential continuing nuisance," even though federal law precluded

3

any interference with its flight patterns or schedules. 39 Cal. 3d 862, 873 (1985). Although that preclusion "add[ed] an element of permanency to an otherwise continuing problem," the airport's noise pollution could still be abated with "the use of buffers, barriers or other noise reducing devices." *Id.* Under *Baker*, then, abatement can include the kind of response actions undertaken by Stanford. *See also Highland Fifth-Orange Partners, LLC v. Inland Fish & Game Conservation Association*, No. E049388, 2011 WL 3964084, at *5 (Cal. Ct. App. Sept. 9, 2011) (holding that a nuisance was abatable where it could be effectively remediated not by removing the contamination, but by "laying down a clay barrier" to protect groundwater and "human activities above the layer").

Finally, HP and Agilent argue the TCE contamination must be deemed permanent because Stanford does not know its extent. *See, e.g., McCoy*, 180 Cal. App. 4th at 90, *and Mangini v. Aerojet-General Corp.*, 12 Cal. 4th 1087, 1095–96 (1996) (*Mangini II*). But in the cases cited by HP and Agilent, the plaintiffs failed to present any evidence of the extent of the contamination or the cost of abatement. In *Mangini II*, for instance, even the plaintiff's attorney conceded, "[N]obody really knows [the extent of the contamination], where it is, what the chemicals are, or how much it's going to cost to abate…" *Id.* at 1095. Here, Stanford has presented sufficient evidence of the extent of the contamination for the issue to go to the jury. *See, e.g.,* Letter from Department of Toxic Substances Control, Dkt. 216-6.

**IT IS SO ORDERED.**

Dated: September 19, 2022

_____
VINCE CHHABRIA
United States District Judge